Good morning. May it please the Court. My name is Hillary Hahn, and I'm up here on behalf of the petitioner, Sama Abdisalan. I'd like to begin by addressing the issues raised by the Court in its order yesterday. The question, of course, from the Court was whether there's jurisdiction to review the Board of Immigration Appeals decision issued in November of 2008, given that Ms. Abdisalan didn't file a direct petition for review within 30 days of that decision. We believe that the Court does have jurisdiction over that decision. The Court's order yesterday cited Al-Ali Amin, in which the Court considered whether an IAJ's order granting cap deferral of removal under the Torture Convention was a final order of removal. And in Al-Ali Amin, the Court looked to the definition of final order of removal in the statute, in Section 1101-847. And under 1101-847, you need to have two things in order to have a final order of removal. First, the immigration judge has to either order removal or find someone removable. And second, the Board of Immigration Appeals has to either affirm that decision, or the 30 days to appeal that decision has to lapse. And then the final requirement in order to get jurisdiction over a final order of removal in this Court is that it has to be administratively exhausted. So in Ms. Abdisalan's case, there are two petitions for review pending. We believe that each one is a petition for review over a final order of removal. How many petitions for review do you get? I mean, the problem here is I counted, I think, five orders of the immigration judge at various stages in the case. Is it the government's position that the alien is entitled to file a petition for review on each of those five and then to look back to the 2008 Board decision and challenge the initial timeliness ruling on the asylum petition? Well, I think the IHA actually issued three decisions. I don't, you know, this is sort of a unique situation in that in 2008, when the Board issued its first remand decision, the Court hadn't issued its decision in Lee. And so in 2008, the immigration regulations relating to background checks had just come out. And if you looked strictly at the statute, you know, a final order of removal, a remand order isn't a final order of removal. And the Court recognized that in Lee. You know, the Court found in Lee that, you know, the remand order sort of is an equivalent of a final order of removal. So for these situations where someone's case is remanded for background checks, it preserves jurisdiction. But what new evidence does the Court have relating to the timeliness of the asylum petition since it was litigated in 2005? There's no new evidence, and we're not claiming that this is a proper motion to reopen or anything like that. I mean, we're claiming that this is a direct appeal of the IJ's order. Six years later. Well, actually seven. Well, you know, in part, the Board of Immigration Appeals had some responsibility for that because they didn't necessarily have to remand this case to the immigration judge in either situation. But they affirmed the ruling on the asylum timeliness issue. Right. And the only thing they remanded for was the completion of background checks. Why it took so long to complete the background checks, I can't tell from the record. But there was no change with regard to the timeliness issue. And when the background checks came clear, the immigration judge entered the relief of withholding of removal. Right. But there was an order of removal entered in 2005 that the Board adjudicated in 2008. Right. What I think is important, though, is when you look at the petitions for review that are actually pending before the court right now, they're petitions for review ultimately of the immigration judge's orders, the second and the third order. And in the second and the third order, the judge didn't just grant withholding of removal. The judge went through every form of relief, denied asylum, ordered removal to Somalia, and then granted withholding of removal as to Somalia. But there wasn't, I mean, other than saying the alien is clear on the background checks, there wasn't any additional evidence presented by either side on the timeliness issue. Right. That's true. But ultimately what this court has jurisdiction to review is the IJ's order. And the IJ's order, if he's denying asylum and ordering removal, he's necessarily encompassing his reasoning as to why he denied asylum in the first place. But the only order that he entered in the latest order was withholding of removal. Well, his latest order, the order that we sought direct review of, denied asylum, ordered removal, and granted withholding of removal. He didn't just restrict it to the withholding of removal issue. He repeated the ruling that he'd made in 2005. I'm still trying to understand why the alien doesn't then have a right under your theory to file a petition for review every time the immigration judge enters one of these interim orders. And what does that do to the concept of finality, and how do we square that with a 30-day time limit, which is both mandatory and jurisdictional? Well, I think that two things about that. First of all, I mean, I think Lee was dealing with a practical situation where there wasn't a strict final order of removal under the statute because the case had been remanded. So it said that this remand order sort of substitutes as the equivalent of a final order of removal. But when the case is remanded and the immigration judge issues the final order after background checks have cleared, the court in Carlos Blassa also said that it's appropriate to file a petition for review from that order as well because it would be futile to go back up to the board. So, you know, under Lee and Carlos Blassa, the courts contemplated that there could be at least two final orders of removal in a particular case. And both of which would justify independent petitions for review. So we theoretically have three appeals pending, and then what would we have to do, consolidate them? Right, and that's exactly what you said in Lee, that that could happen in certain situations. Counsel, can I ask you this because I'm not clear? In 2008, when the BIA issued the remand order, was it the agency's position at that point that that was not a final agency action? I believe so. And the reason I would say that is because in Lee, in 2011, the agency was taking the position that those remand orders weren't final orders of removal. That's true. How could we fault your client, I guess, for not petitioning for review at that point? It seems to me the petitioner was waiting for the IJ on remand to issue the finding that the security or the background checks had been completed, and then you would be able to petition for review afterwards. Yeah, and that is what we were trying to do. And, in fact, in our notice of appeal of the second IJ decision, we specified, and this is, I'm sorry, I don't have the site, but in our notice of appeal, we specified that, you know, in part, we were filing that appeal so that we could get judicial review of the board's order. It seems to me it would be incredibly unfair to retroactively apply the rule in Lee to your client's situation when at the time, at least, the time for petitioning for review, there was no reason to think that you actually had a final agency action before you. Right. I think so. And, in fact, the reason we filed the second notice of appeal, or the second petition for review from the IJ's final order, was just to make sure that we were covered in every way possible. Okay. So now here it is, 2012, and we have a decision on the books in Lee that says there is jurisdiction to hear the asylum claim after the first order. And you want us to issue a decision that says, no, we don't have jurisdiction until seven years later when the order of removal or the withholding of removal is confirmed. How can we as a three-judge panel overrule Lee without going to bank on this issue? We're not asking you to overrule Lee. Lee provided one way to get jurisdiction in a situation like this. Well, Lee is the mirror image, or excuse me, the converse situation. The question there was whether or not we had jurisdiction to review the asylum claim if it was remanded for background checks. We said yes. Right. Here we have an appeal that is brought after the background checks have been completed, and you want to go back and reopen, in essence, the asylum timeliness decision on the basis that the immigration judge reaffirmed that ruling in his latest order. Is that your theory? No. I mean, we've sought direct review from the immigration judge's order. And I guess just one point, too. The immigration judge issued his initial order in 2007. It went up. The board issued a decision in 2008. It went back, and then it went back up one more time. And in 2010, we filed the first petition for review. So this isn't a seven-year delay. We've tried to pursue judicial review throughout this process. And, you know, frankly, the board takes over a year to make a decision on an immigration judge, you know, on its appeals. I understand the explanation for the delay. I'm just trying to figure out if we rule in your favor at finding that we do have jurisdiction several years later when we said in Lee that we have jurisdiction. We would have had jurisdiction had you filed a petition for review in 2008, whether that's necessarily inconsistent with Lee. I don't think it is. I think Lee provided one way in which you could seek judicial review. And like I said, Carlos Blassa said that if the situation in Lee, the petitioner in Lee, had waited until the case had been sent back to the immigration judge and the IAJ had issued his or her order granting withholding after the background checks had cleared, Carlos Blassa said that it would have been appropriate to file a petition for review directly from that decision as well. The regulations do contemplate. Let's suppose that the background checks had come out unfavorably and raised some issue that required the immigration judge to reopen the whole question of entitlement to asylum. Let's say the background check revealed the conviction for a serious felony, which would preclude the statutory relief of withholding of removal. It seems to me there would be no question that you could then appeal the result of that hearing, which presumably then would be unfavorable, and we could examine the underlying ruling. But the underlying ruling would be, I think, limited to whatever came out at the hearing as a result of the background check and the immigration judge's new ruling, which might be different from what the immigration judge said the first time around. So, in essence, I guess what I'm asking is why wouldn't the scope of our review be limited to what came out at the new merits hearing? Well, I think in the scenario that you're describing, the immigration judge's order on remand necessarily encompasses the prior decision on the asylum case, and otherwise Carlos Blasso wouldn't make any sense. Well, he never reached the merits of the asylum claim the first time around because he found it was untimely. Well, I mean, yeah, right. I mean, that would be the issue on appeal. I'm not suggesting that you could consider the merits of the asylum case if that wasn't what was raised by the agency in the first instance. But I guess in my hypothetical, the only evidence that would be new would be evidence of disqualification, statutory ineligibility for withholding of removal. That doesn't have anything to do with the timeliness of the asylum petition. Right. But the fact that it's new or old evidence I don't think is necessarily the question here. I mean, like I said— Let me offer you a lifeline here. It seems to me that your argument is analogous to a district court granting partial summary judgment in a case, but the case is not yet concluded until this subsequent event takes place, in this case confirmation of entitlement to withholding of removal. Right. And under your argument, at that point, the appellate court would have jurisdiction because there would be a final judgment entered, and we could then go back and look at the original partial summary judgment ruling as part of our review of the entire case. Is that fair? That's said much better than I was trying to. And I'm with you all the way on that, except to the extent that we treat an order of removal as the equivalent of a final judgment, we've got three of them, and that doesn't happen in district court cases. Right. But like I said, in Lee, you know, the court acknowledged that there might well be more than one final order of removal. And the court— And we have three. In this case, we do, yes. In Lee, the court acknowledged that could happen and that, you know, it would be the rare situation, and now that Lee's been issued, it's going to happen a lot less because the court's been clear on when you can go to the Ninth Circuit. And the regulations, as I read them, order the agency to speed up the background checks so that they are concluded, if possible, before the merits hearing. Is that right? Yeah. I mean, everybody in immigration court tries to get that done before the merits hearing, yes. And from your experience, how well is that working, counsel? It can be done, and it ordinarily is. And it ordinarily is? It ordinarily is. Okay. We've taken your whole time on the jurisdictional issue. If you have something more to say. Judge Tolman, if I could ask one question on the jurisdictional issue. Mr. Hahn, whether or not there would be a basis to do so, would the immigration judge have the legal authority to have reexamined the asylum issue after the affirmance on the timeliness issue by the Bureau of Immigration Appeals and then the remand? I think that he would have if there had been new evidence that met the requirements for a motion to reopen. There's a board case on this. I think it's a matter of MD in which the board said that when the remand is limited in that way, the IJ can only do that if there's evidence that would meet the requirements otherwise for a motion to reopen. But it still would. And that in a sense is similar to the district court. I'm trying to do what Judge Holman is doing, which is trying to analogize this. And perhaps in light of Lee, it's just impossible to what happens in the district court and where the ideal is that there is going to be just one appealable judgment, absent some very well-defined exceptions. So here, though, the immigration judge would at least have some, at least under some circumstances, as you just described, would have authority to have reexamined the asylum issue then. Right. And then there would be two more substantive orders of removal that would ultimately probably have to be consolidated up here in the Court of Appeals. Thank you. Why don't we hear from the government, and I'll give you some time on rebuttal. Thank you. Ms. Chang, whenever you're ready. May it please the Court. My name is Linda Chang for the Attorney General. In Lee, the Board's order dismissing the appeal of the asylum claim was necessarily a final order because Lee's asylum claim was decided by the Board on the merits. It would not be at issue on remand by the completion of her background checks. Thus, under Lee's reasoning,  So am I right in thinking that at the time, in 2008, the BIA's position was that these orders remanding back to the IJA for completion of the background checks did not result in final agency action at that point? In accordance with matter of MD, that would be correct. Okay. I'm sorry to interrupt you, but if that's true, if the agency's own view at the time was that proceedings before the agency are not completed, wouldn't that necessarily mean that the petitioner couldn't have come to us on a petition for review at that point? Under matter of MD, that would be correct. However, this circuit's case law has held differently. But three years later. Not necessarily. In earlier decisions such as Castro Juan Garcia and What's the site for that? 60F3D1359. Okay. And what did we hold there? That when the Board reversed a grant of suspension of deportation and remanded for the IJA to determine voluntary departure in lieu of deportation, the Board decision was final because nothing was pending before it anymore. Therefore, petitioner had no reason to appeal from the IJA's decision, but rather the Board's decision was then concluded as the appealable decision. So why did we treat it as an open question in lieu? Castro Juan Garcia specifically dealt with voluntary departure, whereas in lieu it was for background checks, which the results are slightly different, whether you are granted voluntary departure or are just going through security checks. Okay. But our case is squarely within the rubric of lieu, right? Yes, it is, Your Honor. According to this circuit's case law. I'm sorry. So what is your position? Because you didn't contest jurisdiction in your brief. So what's your position now? No, Your Honor. We didn't contest it in the brief because, as you see, it is rather a complex issue, which is constantly in flux with the case law, and we thought the purest way to deal with this case was to remand under normal sync for the Board to have another chance to clarify its decision overall. But we denied that motion. You then filed your brief. You did not contest jurisdiction. So is your position changed? That's what I'm trying to get at. The office's position is still to it. The office or the agency? You represent the Office of Immigration and Mitigation, right? Correct. What's the agency's position? The agency's position is that matter of MD is still a valid decision. That's how cases should be interpreted in terms of finality. However, under Ninth Circuit case law, lieu controls this specific petition for review. If that's your position, why don't you just enter into a stipulated motion for remand, dismiss this appeal, and let them reopen before the Board so that you can litigate the timeliness issue and whatever other relief there is to speak about? That may be a possibility, but it was not explored at the time of briefing. Would you like an opportunity to do that? Because, frankly, given the government's change in litigating position and the fact that you didn't press it in your brief, you both sort of left it up to the court to sort of do its own legal research and try to puzzle our way through an issue that neither party has really adequately addressed. In my experience, that is a very poor way to create new appellate law. You may not like the result any more than Mr. Hahn likes lieu. Indeed, Your Honor, and for that reason, I would request supplemental briefing on the issue of finality. Supplemental briefing or an opportunity to confer with your client on a stipulated reopening? Supplemental briefing to explore the extent of the finality issue. Well, can you help me with the hypothetical that I posed to Mr. Hahn? Why isn't this like granting partial summary judgment at an earlier stage of the case but then waiting until all other claims and issues are resolved before entering a final judgment? It is under the reasoning in Lee that this court employs, however, under matter of MD. No, that can't be right because in Lee we said that there was jurisdiction to file a petition for review within 30 days of the original IJ, or excuse me, the original board ruling on asylum, even though the matter had been remanded by the board for completion of background checks, right? Correct. So the question I'm wrestling with is if jurisdiction exists at that time and assuming that there is a petition filed within 30 days of the board's ruling, how can we say years later when there's a 30-day statute of limitation that we still have jurisdiction? Admittedly, there is a tension between that and that is why the agency's decision in matter of MD is what we argue for finality purposes rather than this piecemeal type of litigation that you speak of. Well, if we rule that there is still jurisdiction, I don't know how we avoid the piecemeal. It almost encourages interlocutory appeals when every of the three orders are entered, doesn't it? To a certain extent, I see your point, Your Honor. However, the case is about untimeliness here, that they do want to appeal. That's the only issue that they really are contesting. And at the time, the 2008 board decision addressed it fully and denied it, and therefore that was the time to appeal it. It was ripe, and in matter of MD, which this board has interpreted in Lee to say that when the decision goes back on remand to the immigration judge for background checks, the immigration judge is not free to then re-litigate the prior board decisions. And so, therefore, the decision on the timeliness issue has already been decided and can be… So, in essence, you're arguing that's law of the case. Correct. Right? Yes. Mr. Hahn's client would be collaterally estopped to re-litigate the issue. Correct. So, where does that leave us? It leaves us in a very tight situation, Your Honor. Yes, it does. And counsel, given that it's jurisdictional, isn't it something that has to be addressed and has to be addressed first? You began saying, well, the office or the agency decided that the best way to respond to petitioner's claims were to say it should be remanded under Singh, but I don't think we have the luxury of glossing over a jurisdictional issue and then moving on to an easier issue. I mean, it's just an issue or a stumbling block, wherever you want to phrase it, that has to be addressed first before we get to anything else, because if we don't have jurisdiction, we don't have jurisdiction to decide anything else. Correct, Your Honor, and I apologize that we didn't raise it in the briefs, but we would appreciate a chance to brief it in supplemental briefs. All right, do you have anything you want to add on any other issue besides jurisdiction? No, Your Honor. Okay. Mr. Hahn, I'll give you a minute in rebuttal if you have anything more to say. Just two really quick points. First of all, with regard to this jurisdictional issue, we did brief this issue in our opening brief on pages 18 and 19. Is that that long footnote? Yeah. The second point, in part, understanding that, you know, the Court will determine jurisdiction no matter what the parties' positions are, in part we kept it to a footnote because the government in its motion to remand had already conceded the general jurisdiction was proper. The second point I just wanted to make quickly about Castro and Garcia. I think you conceded this, but we have an independent obligation to determine whether we have to. Absolutely, and that's why we did address it, but maybe didn't spend as much time as we, you know, could have given, had the government been strongly contesting the issue. The other point I just wanted to make with regard to Castro and Garcia, besides the point that you raised, Judge Watford, was that there's, you know, in the interim, after Castro and Garcia, there was a significant amount of litigation in this Court about what it is that constitutes a final order of removal. In Molina Camacho, the Court found that only the I.J. could issue a final order of removal. The Court had to go on Bank and Lalong to reverse that decision. So it certainly wasn't clear that Castro and Garcia was still binding law, and that's why I think the Court did treat it in Lee as an open question. Thank you. Okay. Well, we will do our best to puzzle our way through, and we'll confer with one another to determine whether we need supplemental briefing. But the case just argued is submitted.
judges: Fitzgerald, Tallman, Watford